IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERMAN YAKUBOV,** **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 11-3082** |
| **GEICO GENERAL INSURANCE CO.,** **Defendant.** | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.** **October 24, 2011**

Plaintiff German Yakubov brings this action against his insurer, Defendant GEICO General Insurance Company ("GEICO"), to obtain uninsured motorist and income loss benefits under an automobile liability insurance policy issued by GEICO. Presently before the Court is GEICO's Motion to Dismiss Claims for Punitive Damages and Misrepresentation From the Amended Complaint.[1] For reasons that follow, the Motion will be granted in part and denied in part.

## I. Factual and Procedural Background

On April 24, 2009, at approximately 1:30 p.m., Plaintiff was seriously injured in a motor vehicle accident involving his own vehicle and a vehicle driven by an uninsured motorist.[2] Plaintiff alleges that the uninsured motorist was factually and legally responsible for causing the

[1] Doc. No. 7.

[2] Am. Compl. ¶ 10.

accident.[3] At the time of the accident, Plaintiff was insured under an automobile liability insurance policy (the "Policy") issued by GEICO.[4] Plaintiff submitted a claim to GEICO for Uninsured Motorist ("UM") benefits and income loss benefits under the Personal Injury Protection ("PIP") coverage of the Policy.[5] Beginning in May 2009, Plaintiff received income loss payments from GEICO in the amount of $2,500 per month.[6] These payments continued for seven months, but then stopped without notice in December 2009.[7] By letter dated November 3, 2010, GEICO issued a denial of further income loss benefits to Plaintiff.[8] In addition, GEICO has refused to pay Plaintiff the $300,000 UM benefits to which Plaintiff claims he is entitled.[9]

This action was originally filed by Plaintiff in the Court of Common Pleas of Philadelphia County. On May 10, 2011, GEICO filed a timely Notice of Removal with this Court,[10] followed by a Motion to Dismiss Punitive Damages Claims from the Complaint.[11] On June 1, 2011, Plaintiff filed an Amended Complaint, thereby rendering the first Motion to Dismiss moot.[12] GEICO then timely filed the Motion to Dismiss The Amended Complaint.

---

[3] Am. Compl. ¶ 11.

[4] Am. Compl. ¶ 6.

[5] Am. Compl. ¶¶ 22, 34.

[6] Am. Compl. ¶ 38.

[7] Am. Compl. ¶¶ 38, 40.

[8] Am. Compl. ¶ 41.

[9] Am. Compl. ¶¶ 20-24.

[10] Doc. No. 1.

[11] Doc. No. 4.

[12] Doc. No. 6.

The Amended Complaint contains five Counts: a claim for UM benefits (Count I); a claim for income loss benefits (Count II); a claim alleging a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III);[13] a claim of bad faith (Count IV); and a claim alleging intentional misrepresentation (Count V). GEICO moves to dismiss Count V, arguing that the claim is not plead with the particularity required by Federal Rule of Civil Procedure 9(b) and that it is barred by the "gist of the action" doctrine. In addition, GEICO seeks dismissal of the claim for punitive damages contained in Count III, asserting that UTPCPL does not provide for an award of punitive damages.

## II. Standard of Review

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[14] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[15] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[16] Something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on

---

[13] 73 Pa. Stat. Ann. §§ 201-1 to 205-10.

[14] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[15] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[16] Twombly, 550 U.S. at 555, 564.

its face."[17] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[18] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[19]

## III. Discussion

### A. Intentional Misrepresentation (Count V)[20]

Plaintiff alleges that GEICO represented to him that his Policy provided income loss coverage and charged a premium for income loss coverage, but that GEICO's promise to pay income loss benefits was "wholly illusory" and GEICO never intended to pay income loss benefits.[21] GEICO argues that Plaintiff is attempting to recast his breach of contract claim as a tort claim and is precluded from doing so by the gist of the action doctrine. The Court agrees.

Under Pennsylvania law, the gist of the action doctrine prevents a plaintiff from recasting an ordinary breach of contract claim as a tort claim.[22] The doctrine forecloses tort claims: "1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and

---

[17] Id. at 570.

[18] Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[19] Id. at 562 (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[20] Am. Compl. ¶¶ 73-78. The Amended Complaint does not specify whether the alleged misrepresentation was fraudulent/intentional, negligent, or innocent. However, the Amended Complaint describes intentional conduct and, in response to GEICO's Motion to Dismiss, Plaintiff asserts that the Amended Complaint alleges intentional misrepresentation.

[21] Am. Compl. ¶ 74.

[22] Greenspan v. ADT Sec. Servs. Inc., No. 10-2901, 2011 WL 4361530, at *4 (3d Cir. Sept. 20, 2011).

4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim."[23] "Where the alleged misrepresentation or fraud concerns the performance of contractual duties, 'then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties.'"[24]

In Smith v. Lincoln Benefit Life Co.,[25] the Third Circuit affirmed a district court's dismissal of two negligent misrepresentation claims based on the gist of the action doctrine. The Third Circuit explained:

> Applying the gist doctrine here with respect to the Notice Claim, it is evident that the parties' relationship and duties were framed by the insurance policy. [The Insurer's] alleged misrepresentations and subsequent failure to pay death benefits arose from the insurance contract between the parties and revolved around the provisions for payment, grace period, and lapse. Indeed, this case is "really about" the policy provisions of the contract, and the claims and liability cannot be determined without looking to the terms of the contract. The alleged misrepresentations were directly related to the underlying contractual rights and obligations, and the District Court correctly concluded that the gist of the action sounded in contract and barred [plaintiff's] notice claim.[26]

Similarly, here, the relationship and duties of the parties arise under the Policy. Any failure to pay the income loss benefits to which Plaintiff claims he is entitled would be a breach of the PIP provisions of the Policy. The success of Plaintiff's claims depend upon those provisions of the Policy, and Plaintiff's misrepresentation claim is duplicative of and collateral to his contract claims. Based on the foregoing, it is evident that Plaintiff's "misrepresentation"

---

[23] Smith v. Lincoln Ben. Life Co., 395 F. App'x 821, 823 (3d Cir. 2010) (citing Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).

[24] Id. (quoting eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).

[25] 395 F. App'x 821 (3d Cir. 2010).

[26] Id. at 823 (citation omitted).

claim is "really about" GEICO's alleged breach of its obligations under the Policy and is therefore barred by the gist of the action doctrine.

Further, even if the Court found that the gist of the action doctrine did not bar Plaintiff's misrepresentation claim, it would nonetheless dismiss Count V for failure to state a claim because Plaintiff has failed to plead misrepresentation with sufficient specificity. Pennsylvania recognizes three types of misrepresentation: fraudulent or intentional misrepresentation, negligent misrepresentation, and innocent misrepresentation.[27] While the Complaint does not specify whether the alleged misrepresentation was fraudulent/intentional, negligent, or innocent, in response to GEICO's Motion to Dismiss, Plaintiff characterizes the Amended Complaint as alleging intentional misrepresentation. Further, the Amended Complaint describes intentional conduct.[28] Accordingly, the Court will construe Count V as a intentional misrepresentation claim.

Under Pennsylvania law, the elements of intentional misrepresentation are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury resulting [from] and proximately caused by the reliance."[29] Bortz, 729 A.2d at 560. These

---

[27] Square D Co. v. Scott Elec. Co., No. 06-459, 2008 WL 2096890, at *2 (W.D. Pa. May 16, 2008) (citing Bortz v. Noon, 729 A.2d 555, 560 (Pa.1999)).

[28] Am. Compl. ¶ 74(d) ("Defendant made material misrepresentations to Plaitniff including but not limited to the following: . . . Representing that Plaitniff had automobile insurance coverage when in fact, Defendant had no intention to issue or pay such benefits.")

[29] Square D Co., 2008 WL 2096890, at *2.

elements are equivalent to those of fraud and, as such, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply.[30]

Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Pursuant to Rule 9(b), Plaintiff is required to allege with particularity the "who, what, when, where, and how" of the alleged intentional misrepresentation.[31] Plaintiff has failed to do so here.

Plaintiff alleges that GEICO made the following material misrepresentations:

> (a) Representing that Plaintiff had purchased automobile insurance coverage, including income loss coverage, when in fact Defendant's promise to pay such benefits was wholly illusory; (b) Purporting to offer automobile insurance coverage, including income loss coverage when in fact, Defendant had no intention of providing such benefits; (c) Charging a premium based upon automobile insurance coverage, including income loss coverage when in fact, Defendant would use any excuse, justified or not, to avoid fulfilling its contract with Plaintiff; (d) Representing that Plaintiff had automobile insurance coverage, including income loss coverage when in fact, Defendant had no intention to issue or pay such benefits; (e) Representing that Plaintiff had automobile insurance coverage, including income loss benefits when in fact, Defendant without reasonable justification or basis, refuses to pay said benefits; and (f) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.[32]

These allegations are general and conclusory, and do not meet the pleading requirements of Rule 9(b). Plaintiff does not allege with specificity who made the statements, when or where the statements were made, what the statements were, or even how the statements were

---

[30] Id.

[31] Kanter v. Barella, 489 F.3d 170, 175 (3d Cir. 2007).

[32] Am. Compl. ¶ 74.

communicated. The only communication specifically identified by Plaintiff is a November 3, 2010 letter from a representative of GEICO denying Plaintiff's claim for income loss benefits.[33] However, Plaintiff does not allege that this letter contained material misrepresentations upon which Plaintiff relied to his detriment. Instead, the letter is cited in support of Plaintiff's claim that GEICO breached the terms of the Policy in denying him continued income loss payments. Finally, Plaintiff's claim that GEICO misrepresented its intent to provide Plaintiff income loss benefits under the terms of the Policy is seriously undermined by Plaintiff's allegation that he actually received $17,500 in income loss payments over a period of seven months.

For the additional reason that Plaintiff has failed to state a claim for intentional misrepresentation, the Court will dismiss Count V from the Amended Complaint.

**B. Punitive Damages (Count III)**[34]

In Count III, Plaintiff seeks, *inter alia*, treble and punitive damages for a violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[35] GEICO moves to dismiss the claim for punitive damage, arguing that the UTPCPL does not permit an award of punitive damages. Plaintiff responds that, although the statute does not expressly provide for punitive damages, it provides that a court may award "such additional relief as it

---

[33] Am. Compl. ¶ 41.

[34] Plaintiff also seeks punitive damages in Count IV (bad faith). GEICO does not move to dismiss this claim for damages. Consequently, Plaintiff may proceed with the punitive damage claim contained in Count IV. See Smith v. Cont'l Cas. Co., 347 F. App'x 812, 814-15 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 8371) ("By statute, Pennsylvania provides for interests, costs, attorneys' fees and punitive damages for a bad faith denial of insurance coverage.").

[35] 73 Pa. Stat. Ann. §§ 201-1 to 205-10.

deems necessary or proper," and several courts have held that punitive damages may be awarded in appropriate circumstances.

Under the UTPCPL, a court may, at its discretion, award treble damages and "such additional relief as it deems necessary or proper."[36] The Pennsylvania Supreme Court has held that treble damages under the UTPCPL, although punitive in nature, are not constrained by the common-law requirements associated with an award of punitive damages.[37] The Pennsylvania Supreme Court has *not*, however, determined whether punitive damages are permitted under the UTPCPL as "additional relief." Thus, in deciding whether punitive damages may be awarded here, this Court "must predict how the Pennsylvania Supreme Court, if faced with the identical issue, would construe the statute."[38] In predicting how the Pennsylvania Supreme Court would rule, the Court may give "due regard, but not conclusive effect, to the decisional law of lower state courts," and may consider analogous decisions of other federal district courts.[39]

Few state courts have addressed the issue presented in this case, but several federal district courts have. Of those courts that have addressed the issue, there is a split as to whether punitive damages are available as "additional relief" under the UTPCPL.[40] While some courts

---

[36] 73 Pa. Stat. Ann. § 201-9.2(a).

[37] Schwartz v. Rockey, 932 A.2d 885, 898 (Pa. 2007).

[38] Combs v. Homer-Ctr. Sch. Dist., 540 F.3d 231, 255 (3d Cir. 2008).

[39] See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) ("In predicting how the highest court of the state would resolve the issue, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.") (internal quotation and citation omitted).

[40] Nabal v. BJ's Wholesale Club, Inc., No. 02-2604, 2002 WL 32349137, at *3 n.5 (E.D. Pa. Aug. 2, 2002).

have held that punitive damages are not available,[41] others have concluded that although not expressly provided in the statute, punitive damages are available where the violation of the UTPCPL is extreme.[42]

Whether punitive damages are available under the UTPCPL is an issue that the Court will reserve pending resolution of Plaintiff's substantive UTPCPL claim. Accordingly, the Motion to Dismiss the Punitive Damage Claim will be denied without prejudice as premature and may be renewed by GEICO at a later time, if appropriate.

## IV. Conclusion

The misrepresentation claim contained in Count V is barred by the gist of the action doctrine and will be dismissed. The Court will not dismiss the punitive damages claim contained in Count III at this time.

An appropriate Order follows.

---

[41] See, e.g., Smith v. Bristol-Myers Squibb Co., No. 06-6053, 2009 WL 5216982, at *7 (D.N.J. Dec. 30, 2009) ("[P]unitive damages are unavailable under the UTPCPL."); Hockenberry v. Diversified Ventures, Inc., No. 04-1062, 2005 WL 1458768, at *5 (M.D. Pa. June 20, 2005) (dismissing the claim for punitive damages under UTPCPL).

[42] See Werwinski v. Ford Motor Co., No. 00-943, 2000 WL 375260, at *4 (E.D. Pa. Apr. 11, 2000) (citing Aronson v. Creditrust Corp., 7 F. Supp. 2d 589, 593 (E.D. Pa. 1998)) ("The UTPCPL allows a court discretionary authority to award punitive damages in addition to actual and treble damages in cases where the court finds such additional relief to be 'necessary or proper.'"), aff'd, 286 F.3d 661 (3d Cir. 2002); Adams v. General Motors Corp., No. 89-7653, 1990 WL 18850, at *2 (E.D. Pa. Feb. 26, 1990) ("Although there is little caselaw on the availability of punitive damages under the UTPCPL, what law there is suggests that punitive damages are appropriate where violations are repeated or extreme.").